IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NANCY A. COLAGIOVANNI,

      Plaintiff,

                                    Civil No. 06-6108-AS

    vs.

                             FINDINGS AND RECOMMENDATION

Michael J. Astrue,
Commissioner of Social Security,

      Defendant.
_____

ASHMANSKAS, Magistrate Judge:

    Claimant, Nancy Colagiovanni, brings this action pursuant to the Social Security Act (Act), 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's (Commissioner) final decision.  The Commissioner denied Colagiovanni's claim for Disability Insurance Benefits (DIB).  For the reasons set forth below, the Commissioner's decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION                                [LB]

## PROCEDURAL BACKGROUND

Colagiovanni filed her application for DIB on April 23, 2003, alleging disability since May 1, 2002, due to fibromyalgia, carpal tunnel syndrome, chronic pain, muscle weakness, arthritic and fused neck, Harrington rods in neck, memory problems, fatigue, back pain and hand pain. Colagiovanni's application was denied initially and upon reconsideration. On June 2, 2005, after a timely request for a hearing, Colagiovanni appeared and testified before an administrative law judge (ALJ). Colagiovanni was represented by counsel, Drew Johnson. Jeffrey Tittlefitz, a vocational expert (VE), also appeared and testified.

On February 16, 2006, the ALJ issued a decision finding Colagiovanni not disabled, as defined in the Act. Colagiovanni filed a request for review of the ALJ's decision. On March 22, 2006, the Appeals Council denied Colagiovanni's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 422.210.

## STATEMENT OF FACTS

The medical records submitted in this case accurately set forth Colagiovanni's medical history as it relates to her claim for benefits. The court has carefully reviewed the medical records submitted here, and the parties are familiar with the records. In addition, the Commissioner stipulates to the ALJ's summary of the

medical and testimonial evidence. Accordingly, the details of those medical records will not be recounted here.

Colagiovanni was 50 years old at the time of the hearing; had completed college, earning a Bachelor of Science degree in genetics; and had past relevant work experience as a teacher for the learning disabled, owner of a pool service business and a maintenance supervisor. Colagiovanni alleged disability since May 1, 2002, due to fibromyalgia, carpal tunnel syndrome, chronic pain, muscle weakness, arthritic and fused neck, Harrington rods in neck, memory problems, fatigue, back pain and hand pain. Colagiovanni had not engaged in substantial gainful activity since her onset of date of disability and was insured for benefits through December 31, 2005.

At the 2005 hearing, Colagiovanni testified on her own behalf. Colagiovanni testified regarding her college education; her past work experiences; her physical limitations; and her daily activities. Colagiovanni stated that "My energy usually only lasts about -- I've got at the most about three hours of energy a day, for the day." (Tr. 54). Colagiovanni testified that she presently works about 18 hours a week teaching children with learning disabilities. When asked how she manages the demands of that job, Colagiovanni stated:

> I have, actually have my own classroom so I can, I can kind of
> just stand up or sit down as needed. I do get a small break
> in, in -- right around 1:15 and then I can go out to my truck

and lay down.  But I can kind of sit and stand as needed, so that's what I do.

(Tr. 55).

The VE testified that Colagiovanni's past relevant work was as a pool worker (medium, SVP 4), as a maintenance supervisor (skilled, SVP 7, light), and as a teacher for learning disabled (light, SVP 7, skilled).  Following the hearing, the ALJ wrote a letter to the VE, dated October 28, 2005, requesting that he consider a person with the limitations set forth by Dr. Sharon Elder, a non-examining agency internist.  Based on the ALJ's hypothetical, the VE opined that Colagiovanni would have the residual functional capacity (RFC) to return to her past relevant work as a maintenance supervisor and a teacher for the learning disabled.

The ALJ found that Colagiovanni was insured for benefits through December 31, 2005; Colagiovanni had not engaged in substantial gainful activity since the alleged onset date of disability; Colagiovanni's medically determinable impairments as of December 31, 2005, including her degenerative disc disease of the cervical and lumbar spines, were considered "severe" but, she did not have an impairment or combination of impairments which meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; Colagiovanni's statements regarding her limitations were not totally credible; she retained the RFC to perform a wide range of light, and the inclusive sedentary level

work; and Colagiovanni's past relevant work as a maintenance supervisor did not require the performance of work-related activities precluded by her RFC.  Accordingly, the ALJ found that Colagiovanni was not disabled under the Act and not entitled to DIB.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.  Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; the court may not substitute its judgment for that of the Commissioner's.  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

To be found disabled under the Act, an individual must have a medically determinable physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 20 C.F.R. §§ 404.1520, 416.920.

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920.  First the Secretary determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work in the national economy. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden, then claimant is deemed not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

Colagiovanni contends that the decision of the ALJ was not based on substantial evidence as required by 42 U.S.C. § 405(g), and the ALJ erred as a matter of law in denying her claim. Specifically, Colagiovanni argues that the Commissioner erred by failing to provide clear and convincing reasons for rejecting: (1) her pain testimony; and (2) the testimony of her treating physicians, Drs. Noel D. Goldthwaite and Joan T. Campagna. The court has considered these challenges to the Commissioner's

7 - FINDINGS AND RECOMMENDATION                              [LB]

decision and, based on the grounds set forth below, recommends a finding that there is substantial evidence in the record to support the Commissioner's determination that Colagiovanni was not disabled as defined by the Act.

## I.    Colagiovanni's Testimony

Colagiovanni argues that the ALJ failed to identify clear and convincing reasons for rejecting her testimony and that testimony should be credited as a matter of law because it is supported by the record. Colagiovanni contends that once she produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged, the ALJ was required to identify specific testimony found not credible and explain what evidence undermined that testimony. See generally Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Colagiovanni maintains that she satisfied her burden "with evidence of a multilevel fusion which has left her with only one moving segment in her low back, L5-S1, which is degenerated." The record also includes evidence of multilevel cervical degenerative disc disease with central and foraminal stenosis in her neck and diagnoses of fibromyalgia, polyarthritis, polyarthralgia, lupus, and Sjogren's syndrome.

In addition to her testimony, set forth above, that working for three or fours a day was difficult, Colagiovanni testified that "since I've got to do this job I can't get through the three hours

there unless I stay in bed until it's time to go." (Tr. 53). When she is not working, Colagiovanni is able to do "something" around the house for only 30-45 minutes and then lie down for a few hours. Colagiovanni testified that she experiences pain throughout the day and night from the fused rods, the lupus, the fibromyalgia and the arthritis. She has lost some feeling in her thighs and her fingers are often cold or numb. The ALJ found Colagiovanni's "subjective complaints regarding the nature and extent of her functional limitations [were] exaggerated and not fully credible."

It is well-settled law that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." See, e.g., Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). If there is evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-348 (9th Cir. 1991)(en banc). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). General findings will not satisfy the ALJ's burden; rather, the ALJ must identify what testimony is not credible and the evidence relied upon for that finding. Id. at 834.

In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which she complains. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ may properly discredit a claimant's allegations of disability "if [the] claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," or if there is evidence of "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

As a threshold matter, the court must determine whether the ALJ found affirmative evidence of malingering, which constitutes a clear and convincing reason to reject a claimant's subjective testimony. The ALJ used the term "exaggeration of symptoms" in the context of significant "secondary gain" when referring to the motivation for Colagiovanni's disability application. While these statements may be viewed as passing remarks to imply malingering, the ALJ did not expressly find that Colagiovanni is a malingerer. Instead, he acknowledged his obligation to review Colagiovanni's testimony and consider relevant facts enunciated in 20 CFR §

404.1529(c)(3) and Social Security Ruling 96-7[1] for evaluating a claimant's complaints of pain.   Thus, the issue is whether the ALJ's reasons for finding Colagiovanni not totally credible are supported by the evidence.

A review of the ALJ's written opinion reveals a thorough analysis of Colagiovanni's allegations contrasted with the medical and testimonial evidence of record.   The ALJ carefully considered Colagiovanni's subjective complaints and provided a detailed analysis of whether the alleged impairment was supported by the record as a whole.   The ALJ summarized his findings as follows:

---

[1]    20 CFR § 404.1529(c)(3) provides:

Factors relevant to your symptoms, such as pain, which we will consider include:

(I) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain and other symptoms;

(v) Treatment, other than medication, your receive or have received for relief, of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain and other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

11 - FINDINGS AND RECOMMENDATION                                    [LB]

Objective findings in this case have been quite benign. Relative to neck complaints, a May 2000 chest x-ray incidentally indicated some "mild" degenerative change in the spine and noted the presence of the stabilization rods. A November 2000 MRI of the cervical spine demonstrated some "mild" abnormalities, "mild to moderate" stenosis, some degenerative change, and a very small central protrusion and osteophytic changes at C5. Relative to back complaints, a November 2000 CT scan of the lumbar spine demonstrated degenerative changes, disc protrusion, and some foraminal narrowing. A January 2003 lumbar MRI demonstrated degeneration at L5-S1 with small left posterolateral disc protrusion, and no evidence of spinal compromise. A December 2002 x-ray of the pelvis and lateral hips showed "no evidence of significant degenerative change of the hip joints." Additionally, a May 2000 chest x-ray showed "no evidence of acute cardiopulmonary disease." An August 2000 chest x-ray was again "normal." The objective findings, in combination with the serious questions raised with respect to the role, if any, of the claimant's history of breast implant problems as a causative basis for the symptoms alleged, fail to support the degree of impairment alleged.

There is evidence of exaggeration of symptoms which exists in the context of significant secondary gain incentive for exaggeration of symptoms, namely her motor vehicle accident personal injury litigation which resulted in a settlement, and the ongoing class action for which the claimant has apparently already received some level of settlement, and continues to seek further financial benefit based on Dr. Campagna's writings . . . . The claimant testified that she cannot stay "upright" or "do anything" for more than an hour, but as the Administrative Law Judge pointed out at the hearing, this is contradicted by her own testimony that she has consistently been working as a teacher at least 3 hours per day five days per week for more than one year. Similarly, in January 2004, consistent with her last report to Dr. Goldthwaite, the claimant asserted that she could only sit for "a few minutes, stand only 5 minutes, and walk only 5 minutes," very extreme limitations which are disproportionate to the objective findings herein, and which if true, would have precluded her from performing the light level part time work as a teach that she began later that year, and does much to demonstrate her actual capability. There are a number of references in the record to the fact that the claimant has yet to have the existing implants removed. In light of the level of subjective complaints which the claimant seeks to attribute to her ruptured breast implants, it also seems rather

inconsistent, in fact it defies logic, that to date she has not had them removed given the risk; again in October 2003, Dr. Campagna noted "no surgery to remove implants, yet worsening." It is additionally noted that when establishing medical care after moving to Oregon, the claimant indicated that she was the "retired" mother of a six year old girl and going through a divorce.

(Tr. 21)(citations to exhibits omitted).

Thus, in considering the proper weight to be given Colagiovanni's testimony, the ALJ followed the law of this Circuit by identifying specific testimony and providing clear and convincing reasons from the record to support his decision to discredit that testimony. For example, while Colagiovanni testified that she is only able to work three or four hours daily and must take breaks in order to engage in her daily activities, her own statement indicates that she has the capacity to perform such activities, despite her pain, by making necessary adjustments. On point, Colagiovanni stated that while working at the school she has her own classroom and is able to "stand up or sit down as needed." Also, when given a break, she "can go out to [her] truck and lay down." Similarly, with respect to her past relevant work as a self-employed person, Colagiovanni reported that "Working at home allowed me to take breaks often, as needed. I was able to lay down and rest one to two times per day for several hours and I could always stop whatever I was doing as the pain got worse."

Moreover, the clinical evidence demonstrated that Colagiovanni was capable of returning to her previous work where she was able to

take breaks as needed and did not lift objects over ten pounds.  As set forth above, the ALJ carefully reviewed the objective medical evidence of record and concluded it was benign.  Thus, the ALJ supported his decision to partially discredit Colagiovanni's testimony with objective medical evidence.

In addition, the ALJ provided additional support for discounting Colagiovanni's subjective pain.  First, the ALJ noted there was evidence of exaggeration of symptoms for secondary gain; namely, her motor vehicle accident personal injury litigation which resulted in a settlement, and the ongoing class action for which the claimant has apparently already received some level of settlement, and which she continues to seek further financial benefit based on Dr. Campagna's writings.[2]  The ALJ also highlighted the discord between Colagiovanni's testimony that she cannot stay  "upright" or "do anything" for more than an hour and her testimony that she has consistently been working as a teacher at least three hours per day five days per week for more than one year.

---

[2]     The court is aware that every social security claimant is motivated to some degree by the prospect of gain, so an adverse credibility finding must rest on more than the mere fact that a claimant is pursuing a claim.  It is included here as one of several factors to support the ALJ's determination.  In addition, the ALJ referenced "secondary gain" not as it relates to Colagiovanni's attempt to qualify for DIB, but for her potential to recover additional settlement monies.

The ALJ's consideration of the minimal medical evidence put forth to support Colagiovanni's disability claim, Colagiovanni's work record and the inconsistencies between her alleged limitations and her working daily were sufficient to satisfy his burden.  As a result, substantial evidence in the record supports the ALJ's decision to discount Colagiovanni's subjective pain complaints.

Thus, as set forth above, the ALJ identified specific evidence in the record that was inconsistent with Colagiovanni's claim of a disability rendering her unable to work.  Accordingly, there is substantial evidence to support the ALJ's credibility determination that Colagiovanni's testimony of disabling pain was not supported by other evidence of record.   It is the duty of the trier of fact, and not this court, to resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.  See Reddick, 157 F.3d at 720-21 ("If the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, the court may not substitute its judgment for that of the [ALJ].").

## II.  Testimony of Treating Physicians

Colagiovanni contends the ALJ erred when the ALJ failed to afford sufficient weight to the opinions of her treating physicians, Drs. Noel Goldthwaite and Joan Campagna.  Specifically, in a letter dated April 20, 2004, Dr. Goldthwaite stated that "[i]n my medical opinion, [Colagiovanni] has not met even the minimum

requirements for sedentary work for two years and is not expected to be able to meet them at any time in the future." Dr. Goldthwaite opined that Colagiovanni "cannot remotely attend an eight hour per day job even one or two days a weeks let alone five days a week on a sustained basis." In addition, the record includes a letter dated, March 6, 2004, from Dr. Campagna that states, in part, that Colagiovanni "is permanently disabled due to a diagnoses of systemic lupus erythematosus and Sjogren's syndrome and fibromyalgia."

The weight attributable to the opinion of a medical source depends, in part, on the relationship between the physician and the claimant. Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than that of a physician who did not examine the claimant but formed an opinion based on a review of the claimant's medical records. Holohan v. Massanari, 246 F.3d 1195, 1201-1202 (9th Cir. 2001).

The ALJ can reject a treating or examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An uncontradicted opinion may be rejected

only for clear and convincing reasons.  Thomas, 278 F.3d at 956-957.

Although there is some dispute, the court finds that both Drs. Goldthwaite and Campagna were treating physicians and, therefore, the ALJ was required to set forth clear and convincing reasons for discounting their opinions.  In rejecting Dr. Goldthwaite's, April 2004 opinion, the ALJ stated:

> This opinion was clearly drafted in terms to preclude a finding of nondisability, but it is not persuasive.  This statement was precipitated by the claimant's March 9, 2004, telephone call to Dr. Goldthwaite wherein she "requested that when her attorney sends forms requesting a report of disability that I assist in defining her disability, and I will be happy to do that."  Apart from reciting verbatim the claimant's subjectively reported functional limitations at the January 13, 2004, visit, as detailed in the following paragraph, Dr. Goldthwaite fails to articulate any specific functional restrictions or rational, but appears to have provided a "canned" vocational (nonmedical) conclusion on an issue reserved to the Commissioner under Social Security Ruling 96-5p.  Dr. Goldthwaite's relationship to the claimant appears to have been solely related to her 1999 motor vehicle accident injuries and the associated personal injury litigation, not relative to her general medical condition.
>
> Additionally, three months before the opinion was provided to the claimant's representative, Ms. Colagiovanni told Dr. Goldthwaite that due to neck and back pain, she could walk or sit for only 5 minutes, sit "a few minutes," and lift only . . . very light objects, statements which Dr. Goldthwaite apparently accepted at face value, but which the Administrative Law Judge does not.  she also said on January 13, 2004, that "pain prevents her from traveling," although she had traveled some 500 miles to the San Francisco Bay Area to see him that day, and had seen Dr. Campagna also in the Bay Area ten days earlier plus three months before that as well.  Whether by airplane or auto, clearly the claimant was in fact able to travel, and to sit for prolonged periods beyond 5 minutes.  These subjective complaints are also inconsistent with Ms. Colagiovanni's subsequent half time light level work activity as a teacher.  Notably, when the opinion was issued

in April 2004, the claimant had gone to California for one
visit with Dr. Goldthwaite in January 2004; at that time, he
had not seen the claimant for a full three years, namely since
May 4, 2001, and then only once in that year of 2001, so he
did not have any longitudinal treating relationship on which
to base the opinion, which clearly was a form of advocacy
rather than objective evaluation.  All of these factors
adversely affect the probative value, if any, of Dr.
Goldthwaite's opinion.

(Tr. 22-23)(citations to exhibits omitted).

Similarly, with respect to Dr. Campagna's March 2004 opinion

that Colagiovanni was permanently disabled, the ALJ stated, in

part, as follows:

This endorsement of disability is not convincing or entitled
to controlling or great weight for the following reasons.
Overall, it is apparent that Dr. Campagna has not functioned
as a treating physician, but rather has functioned as a
patient advocate for purposes of making reports for the
silicone breast implants class action litigation.  Ms.
Colagiovanni initiated contact with the physician for the
specific purpose of addressing her silicone implant exposure
issues, not for purposes of treatment, and she has seen Dr.
Campagna very infrequently, in fact only two times three
months apart (October 24, 2003, and January 3, 2004) since the
alleged onset date nearly four years ago which essentially
coincides with when Ms. Colagiovanni sold her business and
moved to Oregon.  This does not constitute a treating doctor-
patient relationship.  The contacts then and previously have
seemingly been for purposes of advocacy related to the
claimant's involvement in obtaining various types of
disability benefits in the silicone breast implant class
action litigation.  As discussed above, the limitations
imposed are not supported by the record, and are inconsistent
with the claimant's subsequent work activity.  It is also
interesting that social interaction limitations are imposed,
yet there is no evidence or even a suggestion of such
limitation in the extensive records.  Consistent with that,
the documentation provided by Dr. Campagna contains numerous
detailed reports geared to supporting qualification for
financial benefits in the class action, whereas the actual
chart notes are relatively minimal.

(Tr. 23-24).

18 - FINDINGS AND RECOMMENDATION                          [LB]

Based on the foregoing, the court is satisfied that the ALJ properly set forth reasons for rejecting Drs. Goldthwaite's and Campagna's opinions.    The record reveals that her treating physicians relied, at least in part, on her subjective complaints about pain, discomfort and lack of energy when making their diagnoses. The ALJ properly discounted the treating physicians' opinions after considering the purposes for which their opinions were provided, the extent of their treating relationship with Colagiovanni, the contradictory evidence such as Colagiovanni's ability to travel, the objective medical findings, and Dr. Kurt Brewster's, the non-treating physician, opinion that Colagiovanni "may not satisfy diagnostic criteria for a specific disorder such as lupus."    Finally, the ALJ noted that while Dr. Campagna attribute's Colagiovanni's medical impairments to "toxicity from silicone breast implants," there currently is no medical or scientific evidence to support such a conclusion.    In fact, the scientific evidence is to the contrary.    See, e.g., Hall v. Baxter Healthcare Corporation, 947 F.Supp. 1387 (D.Or. 1996).

The ALJ can support his findings "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 722.    The court is satisfied that the ALJ gave specific and legitimate reasons, supported by the record, for disregarding Drs. Goldthwaite's and Campagna's opinions.

**CONCLUSION**

Based on the foregoing, there is substantial evidence in the record to support the Commissioner's finding that Colagiovanni was not disabled, as defined by the Act, prior to December 31, 2005, and, therefore, the decision of the Commissioner should be AFFIRMED. Accordingly, Colagiovanni's Complaint (doc. #2) should be DISMISSED and all other motions should be DENIED as moot.

Dated this _____ day of April 2007.


        /s/Donald C. Ashmanskas
        Donald C. Ashmanskas
        United States Magistrate Judge


**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due May 4, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.