IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LEEAN WICK, | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 08-6108-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

Plaintiff Leean Wick ("Wick") challenges the Commissioner's decision finding her not

disabled and denying her applications for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons,

the Commissioner's decision is REVERSED and REMANDED for the immediate calculation and

award of benefits.

I review the Commissioner's decision to ensure the Commissioner applied proper legal

standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Administrative Law Judge ("ALJ") made his decision based upon a five-step sequential process established by the Commissioner. 20 C.F.R. §§ 404.1520(a); 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (9th Cir. 1987).

## PROCEDURAL BACKGROUND

This case has a long and complex procedural history. Ms. Wick first applied for DIB on April 9, 1998, alleging disability since March 31, 1998. AR 184-86. Ms. Wick made subsequent applications for DIB on March 3, 2000 (AR 188-90), and for SSI on March 6, 2000 (AR 873-74). These applications were denied initially and upon reconsideration. Ms. Wick appealed these denials, and ALJ Kingrey held hearings on September 16, 2002 (AR 75-137), December 16, 2002 (AR 1252-1322), and January 15, 2003 (AR 138-46). The ALJ subsequently found Ms. Wick not disabled on April 18, 2003. AR 22-38.

Ms. Wick appealed the matter to this court, which affirmed the ALJ's April 2003 decision. AR 1162. Ms. Wick appealed to the Court of Appeals for the Ninth Circuit, which remanded the matter back to the Commissioner on March 10, 2006, for further proceedings before an ALJ. AR 1162-75. The Ninth Circuit remand Order specifically instructed the ALJ to reconsider his findings at steps three, four, and five of the sequential proceedings and include questions regarding Ms. Wick's "severe mental impairment" in his hypothetical questions to the vocational expert. AR 1170-71. Following this Order, the Social Security Administration Office of Hearings and Appeals consolidated Ms. Wick's additional September 15, 2003, and May 23, 2005, benefit applications and remanded the matter to the ALJ. AR 1213-14.

A different ALJ, ALJ Elliot, held a fourth hearing on September 29, 2006 (AR 1632-1702), and subsequently found Ms. Wick not disabled in a twenty-page decision issued September 17,

2007.  AR 887-907.  Ms. Wick presently appeals that decision and seeks an immediate award of benefits.  The Commissioner opposes award of benefits and moves to remand the matter for further proceedings.  Docket # 22.  The record before this court constitutes 1,702 pages, with few incidences of duplication.  Docket # 13.

**THE ALJ'S FINDINGS**

On September 17, 2007, the ALJ found that Ms. Wick had not engaged in substantial gainful activity since her alleged onset date.  AR 889.  The ALJ found that Ms. Wick had the following "severe" impairments at step two: degenerative disc disease in her lumbar spine, degenerative joint disease in her right shoulder, degenerative joint disease in her knees, obesity, type II diabetes mellitus, and recurrent rectal and vaginal prolapse with incontinence.  AR 890.  The ALJ found Ms. Wick's mental impairments non-severe (AR 896), and found that Ms. Wick's impairments did not meet disorder "listed" in the Commissioner's regulations (AR 903).  The ALJ subsequently discussed Ms. Wick's credibility at length, but made no succinct credibility finding.  AR 904-06.

The ALJ evaluated Ms. Wick's RFC as:

> [T]he claimant has the residual functional capacity to perform sedentary work activity.  She is able to sit 6 hours during a fulltime 8-hour workday.  She is able to stand 2 hours during a fulltime 8-hour workday.  She is able to engage in slow and deliberate walking on an even surface for 2 hours during a fulltime 8-hour workday.  She is able to lift and/or carry up to 20 pounds.  She should avoid repetitive and/or prolonged use of her arms for pushing or pulling activities.  She should avoid crawling, kneeling and overhead work.  She requires ready access to a restroom.

AR 903.  The ALJ found that this RFC allowed Ms. Wick to perform her past relevant work at step four in the sequential proceedings.  AR 906.  The ALJ therefore found Ms. Wick not disabled.  AR

PAGE 3 -  OPINION AND ORDER

907.

## ANALYSIS

Ms. Wick contends that the ALJ failed to follow the Court of Appeals's remand Order, made improper findings at steps two and three of the sequential proceedings, improperly evaluated her testimony, the medical evidence, and the testimony of lay witnesses, and, consequently, erroneously found her not disabled.

## I.      Remand Order

Ms. Wick contends that the ALJ failed to comply with the Ninth Circuit's March 10, 2006, remand Order ("Order").  Ms. Wick asserts that the ALJ failed to comply with the Ninth Circuit's Order regarding her credibility, physician opinions, and severity of her mental impairment.  Pl.'s Opening Br. 32.[1]

The reviewing court's remand order may include "detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed." *Sullivan v. Hudson*, 490 U.S. 877, 885 (1989).  Deviation from such an order is legal error which may warrant reversal.  *Id.* at 885-86.

### A.      Remand Order: Mental Impairments

Ms. Wick specifically contends that the Ninth Circuit ordered the ALJ to submit a hypothetical question to the vocational expert regarding Ms. Wick's mental impairments.  Pl.'s Opening Br. 31.  The Ninth Circuit's Order discusses Ms. Wick's mental impairments at length but does not explicitly credit specific evidence.  AR 1166-71.  The Ninth Circuit remanded the matter

---

[1]The court notes that Plaintiff's briefing contravenes Local Rules 7.2(b)  and 10.1(d). The court particularly notes Plaintiff's use of an unconventional typeface contrary to Local Rule 10.1(d).

back to this court, and subsequently the Commissioner, to address Ms. Wick's "severe mental impairment." AR 1170. The Order concludes, "on remand, the ALJ must pose a hypothetical to the vocational expert that takes into account Wick's mental impairment as well the pain, symptoms and limitations to which Wick testified." AR 1171.

Upon remand, the ALJ found Ms. Wick's mental impairments non-severe (AR 896) and consequently did not include related limitations in his RFC assessment (AR 903) and subsequent questions to the vocational expert (AR 1691-92). These findings directly contradict the Order. The effect of the ALJ's deviation is discussed in the court's review of the record below.

**B.    Remand Order: Credibility**

Ms. Wick's submission to this court also asserts that the ALJ failed to follow the Ninth Circuit's Order regarding her credibility. Pl.'s Opening Br. 32-33.

The Order explicitly rejects the ALJ's credibility findings regarding Ms. Wick's alleged symptom exaggeration and activities of daily living. AR 1163-66. The Order notes that the ALJ's malingering finding was based upon insufficient evidence (AR 1163-64) and notes that a claimant may not be penalized for performing activities despite her impairment (AR 1165-66).

Upon remand, the ALJ again repeated the findings made in the ALJ's April 2003 decision regarding Ms. Wick's alleged malingering and activities of daily living. AR 904-05. This analysis again directly contradicts the Ninth Circuit Order. The ALJ's findings are not sustained. The effect of the ALJ's findings are discussed more fully below.

**C.    Conclusion: Ninth Circuit Order**

The Order addresses two prongs of the ALJ's decision: his step two severity analysis regarding Ms. Wick's mental impairments and his credibility analysis. AR 1163-71. The ALJ's

PAGE 5 - OPINION AND ORDER

September 2007 decision repeated the same errors articulated by the Court of Appeals, and again reached a conclusion the Court of Appeals found unsupported by substantial evidence or the correct legal standard. Such deviation may warrant reversal. *Sullivan*, 490 U.S. at 885-86. The effects of this deviation are developed below.

## II.    The ALJ's Step Two Finding

Ms. Wick contends that the ALJ's step two findings failed to comply with the Ninth Circuit's Order. Pl.'s Opening Br. 40-43. As discussed above, this contention is correct. The Commissioner now concedes that the ALJ's step two findings "insufficiently evaluated" Ms. Wick's mental impairments. Def.'s Br. 6. However, the Commissioner further contends that the ALJ should be afforded another opportunity to make dispositive step two findings. *Id.*

At step two, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. §§ 404.1520 (c); 416.920 (c), *see* also 20 C.F.R. §§ 404.1521; 416.921. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. §§ 404.1509; 416.909. However, the ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). The ALJ's step four and step five analysis must consider a claimant's impairments in full.

Because the ALJ proceeded beyond step two in the sequential analysis, the court will consider the effect of any step two omission in addressing the ALJ's subsequent sequential findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis). The effect of the mental impairments omitted by the ALJ at step two are discussed below. This court therefore will

not remand the matter at step two in the sequential proceedings.

### III.    Ms. Wick's Credibility

As noted, the ALJ failed to comply with the Ninth Circuit Order regarding his credibility analysis.  Ms. Wick now submits that the ALJ again failed to give clear and convincing reasons for rejecting her testimony.  Pl.'s Opening Br. 32-37.  The Commissioner presently fails to answer or address Ms. Wick's credibility challenge.  I address each of the ALJ's findings below.

#### A.    Credibility Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*  Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**B.      Credibility Analysis**

**1.      Activities of Daily Living**

The ALJ's September 2007 decision again noted Ms. Wick's ability to care for her child, complete basic household chores, and other sporadic activities.  AR 904-05.  This reasoning, cited in the ALJ's 2003 opinion, was explicitly overturned by the Ninth Circuit.  AR 1165-66.  Here, the Ninth Circuit found that a claimant need not be "utterly incapacitated" to establish a finding of disability, and noted that Ms. Wick performed her reported activities despite her symptoms and with assistance.  *Id.* (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

This court adopts the Ninth Circuit reasoning.  While a claimant's activities need not amount to work activity to contradict an allegation of disability, *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999)), an ALJ may not reject a claimant's testimony simply because she engages in minimal daily activities despite her impairments. *Vertigan*, 260 F.3d at 1050; *see* also *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  The ALJ's reasoning regarding Ms. Wick's activities of daily living is again rejected in concurrence with the Ninth Circuit Order.

**2.      Symptom Exaggeration**

The Ninth Circuit Order also addresses the ALJ's April 2003 finding that Ms. Wick exaggerated her symptoms.  AR 1163-64.  The Ninth Circuit found the ALJ's conclusion regarding Ms. Wick's alleged malingering unsupported by substantial evidence.  AR 1164.

The ALJ's September 2007 decision again found that Ms. Wick exaggerated her symptoms. AR 905.  Here the ALJ relied upon medical expert Dr. Crossen's statement that Ms. Wick's record reflects symptom exaggeration.  AR 902, 905.  However, the ALJ's review of the record made no such notation, and this court's review of the extensive record finds no consistent evidence submitted

by Ms. Wick's many treating or examining physician demonstrating symptom exaggeration. On one occasion, which both the ALJ and the Commissioner fail to cite, evaluating psychologist Dr. Pitchford noted that Ms. Wick's personality inventory testing produced an "invalid" test result. AR 1602. This alone does not support the ALJ's inference that Ms. Wick exaggerated her symptoms and subsequently impinges her own credibility. The ALJ's finding that Ms. Wick exaggerated her symptoms is therefore rejected.

### 3.    Misrepresentations

The ALJ found that Ms. Wick allegedly misrepresented her October 2002 psychiatric hospitalization as a suicide attempt rather than treatment for substance abuse. AR 905. The ALJ concluded that this alleged substance abuse, in conjunction with Ms. Wick's alleged symptom exaggeration, "raise[s] significant issues regarding the veracity and truthfulness of the claimant's application and testimony." *Id.*

The record shows that Ms. Wick was hospitalized between October 1, 2001, and October 7, 2001. AR 787-813. Attending physician records show that Ms. Wick reported suicidal ideation and parasuicidal behavior as well as alcohol abuse immediately prior to admission. AR 787. These records reference alcohol and benzodiazepines "disuse" in relation to Ms. Wick's suicide attempt. AR 788. They do not reference systematic or ongoing substance abuse unrelated to Ms. Wick's suicidality. The ALJ's finding that Ms. Wick "misrepresented" this episode is unsupported by the record. The ALJ's finding is rejected.

### 4.    "Conservative and Routine" Treatment

The ALJ characterized Ms. Wick's treatment as "conservative and routine." AR 905. The extensive record before this court shows that Ms. Wick has had bilateral patellectomies (surgical

removal of the kneecap), with multiple subsequent knee surgeries, and shoulder surgery. AR 1641. Ms. Wick additionally had multiple operations to treat uterine and rectal prolapse with associated incontinence. *Id.* Finally, Ms. Wick received ongoing mental health treatment with extensive pharmacological intervention throughout the period under review. AR 583-93, 710-15, 778-86, 825-29, 847-51, 1100-25. The ALJ's "conservative and routine" characterization does not reflect this record.

Additionally, the ALJ also characterized Ms. Wick's bladder surgery addressing her incontinence as "successful." AR 904. The Commissioner presently fails to provide citations to portions of the 1,702 page record before this court supporting the ALJ's statements. This court finds no indication that Ms. Wick's surgery resolved her incontinence as a final result; Ms. Wick instead testified at her September 2006 hearing that she is "continuously having problems" pertaining to her bladder surgeries and was awaiting further specialist evaluation. AR 1641. The ALJ's characterization of Ms. Wick's bladder impairment is not supported by the record.

### 5.    Failure to Follow Treatment

The ALJ also found Ms. Wick "noncompliant" with treatment. AR 905. Here the ALJ noted that Ms. Wick delayed knee surgery due to pending bladder surgery (AR 891), and experienced failed bladder surgery because she lifted her child despite lifting restrictions (AR 891-92). The ALJ also noted that Ms. Wick missed one medical appointment in June 2001. AR 893. Finally, the ALJ cited Ms. Wick's failure to lose weight.

A claimant's failure to seek medical treatment may adversely effect her credibility. *Smolen*, 80 F.3d at 1284. I do not find that Ms. Wick's reasons for delaying surgery and lifting constitute "noncompliance" with treatment. Nor does indication of one missed appointment in a complex

record spanning a twenty year period establish failure to seek treatment.

The ALJ also wrote that Ms. Wick "admitted to not being compliant and wearing a boot prescribed for her left ankle 'fracture'" regarding her November 2001 left ankle injury. AR 894. The ALJ's citation indicates only that Ms. Wick did not wear an ankle fracture boot; the physician's clinical note does not say that Ms. Wick generally failed to follow treatment. AR 693. This citation does not support the ALJ's inference that Ms. Wick "admitted to not being compliant," in turn discrediting her entire testimony.

The ALJ's finding that Ms. Wick's failure to lose weight establishes failure to follow treatment additionally contradicts the applicable legal standard. The Ninth Circuit has stated that an ALJ may not make an assumption that obesity is remediable "without making a factual finding." *Doddrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ presently made no findings supporting his inference that Ms. Wick's obesity was remediable, and that her failure to lose weight consequently constitutes a failure to follow treatment which detracts from her credibility. The ALJ's inference that Ms. Wick's failure to lose weight detracts from her credibility neither based upon the record nor the appropriate legal standards.

The ALJ did not otherwise cite the record in support of his finding that Ms. Wick failed to follow treatment, and this court's review of the extensive record finds no indication that Ms. Wick's treating providers assessed such purported failure. The ALJ failed to apply the proper legal standard and failed to establish that his finding was based upon the record.

### 6. Work History

The ALJ also found Ms. Wick not credible because she has a poor work history. AR 905. The ALJ may cite a claimant's work history in finding her not credible. *Thomas v. Barnhart*, 278

F.3d 947, 959 (9th Cir. 2002).

The ALJ first stated that Ms. Wick's prior employment "ceased for reasons unrelated to her alleged disability.  She quit her job as a cosmetologist in March 1998, and filed for disability benefits due to her knee problems."  AR 904.  This assessment is internally contradictory and is not sustained.  The ALJ also stated, without citation to the record, that Ms. Wick quit a phone solicitor job because of incontinence, but that "her employer did not feel termination was appropriate based on incontinence."  *Id.*  This court must affirm "inferences reasonably drawn."  *Batson*, 359 F.3d at 1193.  The ALJ's reference, without citation, to the view of Ms. Wick's employer does not constitute substantial evidence that Ms. Wick's work cessation was unrelated to her impairments.  The ALJ's discussion and subsequent characterization of Ms. Wick's work history is not based upon the record.

The ALJ additionally noted that Ms. Wick complete vocational rehabilitation and sustained "substantial gainful activity" level work on several occasions.  AR 905.  The ALJ also found that Ms. Wick had not engaged in substantial gainful activity.  AR 889.  This court therefore infers that the ALJ characterizes Ms. Wick's work attempts as "unsuccessful" under the Commissioner's administrative ruling.  However, the ALJ subsequently found that Ms. Wick's work attempts "suggested a higher level of functioning."  *Id.*  The unsuccessful work attempt concept is an equitable device allowing the Commissioner to disregard such attempts.  SSR 05-02, 2005 WL 568616 at *1.  The ALJ's inference that Ms. Wick's work attempt undermines her allegation of disability contravenes this standard and is therefore not sustained.

## C.    Credibility Conclusion

The ALJ's credibility analysis is not based upon the record or the applicable legal standards.

The ALJ's analysis additionally contradicts the standards set forth in the Order. For these reasons, the ALJ's credibility finding is not sustained.

## IV.    Medical Source Statements

Ms. Wick challenges the ALJ's rejection of the opinions of numerous treating and examining physicians, as well as the ALJ's reliance upon a medical expert's opinion.

### A.    Standards: Medical Source Statements

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* The ALJ may also reject a physician's opinion unsupported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nurse practitioners are not "acceptable medical sources" under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). However, if a nurse practitioner works under the supervision of a physician in a team environment, then the nurse practitioner's opinion may be construed as an element of the physician's opinion. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). Findings of disability are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).

### B.    Treating Physician Opinions

The ALJ rejected work-related limitations assessed by treating physicians Drs. House, Lang, and Baculi, as well as nurse practitioners Slind and Breyer. The ALJ also rejected some, but not all, of their associated clinical opinions.

#### 1.    Dr. House

Dr. House treated Ms. Wick between October 24, 1996, and August 22, 2000. AR 442-73.

During this period, Dr. House assessed chronic depression with possible bipolar disorder, osteoarthritis, GERD, chronic sinusitis,  chronic cervical and lumbar strain, morbid obesity, left carpal tunnel syndrome, urinary incontinence, chronic bilateral knee pain, and right knee strain.  *Id.* On October 20, 2000, Dr. House wrote that he had treated Ms. Wick since 1996, and that her diagnoses included chondromalacia in both knees with chronic knee pain, severe pelvic relaxation with both cystocele and rectocele and urinary incontinence, gastroesphogeal reflux disease ("GERD"), asthma, chronic allergic rhinitis, and recurrent depression.  AR 441.  Dr. House noted that specialists recommended additional knee surgeries and sinus surgery, and added that, "given her home situation she is unable to attend to this medical need as well."  *Id.*  Dr. House concluded that "[t]hese problems taken individually would certainly not qualify her for disability.  I do however strongly believe that given the multitude of her concurrent medical problems, she cannot and should not be working outside the home in any capacity."  *Id.*

The ALJ cited Dr. House's clinical opinion, but rejected Dr. House's October 2000 disability opinion, finding it reserved for the Commissioner and additionally contradicted by "longitudinal records."  AR 892.  The ALJ failed to note that Dr. House's opinion was supported by his own clinical notes.  The ALJ's finding that Dr. House's opinion contradicts longitudinal medical records is furthermore circular; Dr. House's clinical notes produced between October 1996 and August 2000 constitute a significant part of the longitudinal medical record.  This reasoning is rejected.

### 2.    Dr. Lang

Orthopedist Dr. Lang treated Ms. Wick between November 30, 2001, and May 5, 2002.  AR 697-709, 730.  Dr. Lang assessed an ankle injury as well as chronic knee pain and dysfunction following Ms. Wick's bilateral pallectomies, noting "there is no good way to change this."  AR 702.

He also assessed back pain secondary to a motor vehicle accident.  AR 697-99.

Dr. Lang suggested work restrictions for Ms. Wick on January 9, 2002, and April 3, 2002. AR 663, 665-66.  Dr. Lang's January 9, 2002, letter stated that Ms. Wick has chronic pain due to her pallectomies.  Dr. Lang described Ms. Wick's resulting knee pathology and noted that the procedure is "rarely performed these days" and that Ms. Wick has "really no good surgical or non-surgical [treatment] option." AR 665.  On April 3, 2002, Dr. Lang stated that Ms. Wick cannot sit more than thirty minutes, cannot bend, and cannot lift more than twenty pounds.  AR 663.  He restricted these limitations to the period between March 12, 2002 to May 10, 2002.  *Id.*

Dr. Lang wrote an additional letter to Ms. Wick's attorney on November 26, 2002.  AR 821-22.  Dr. Lang referenced his January 2002 letter, and stated that his March 2002 restrictions related to Ms. Wick's back pain only, and not to her knee pain.  AR 821.  Dr. Lang concluded that he considered Ms. Wick "permanently" disabled due to her knee pain and dysfunction.  *Id.*

The ALJ noted Dr. Lang's clinical notes, but rejected Dr. Lang's November 2002 disability opinion because "there is no showing that he found her unable to work as Social Security defines disability." AR 895.  Dr. Lang did not purport to find Ms. Wick disabled as such; he specifically deferred to Ms. Wick's attorney regarding a "legal issue." AR 822.  The reasoning offered by the ALJ is not a specific and legitimate reason to reject Dr. Lang's work restrictions.

The ALJ also found that Dr. Lang "significantly" declined to complete counsel's letter regarding restrictions to sedentary work.  *Id.*  Dr. Lang responded to counsel's request with a two-page narrative letter, rather than completing a form submitted by counsel.  The length and content of Dr. Lang's letter do not support the ALJ's finding that Dr. Lang deliberately, much less "significantly," did not complete the form.  The court additionally notes that an ALJ may not reject

a physician opinion simply because it was solicited by counsel. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). The ALJ's findings regarding Dr. Lang are not sustained.

### 3.    Nurse Practitioner Slind and Treating Physician Dr. Baculi

Nurse Practitioner Julie Slind[2] treated Ms. Wick at the Salem Clinic between August 11, 2003, and August 25, 2006. AR 1511-98. During this period Nurse Slind assessed and treated chronic back pain, anxiety, GERD, migraine headaches by history, asthmatic bronchitis, conjunctivitis, otalgia, diabetes, chronic bilateral knee pain, recurrent cystitis, vaginitis, perineal ulcer, urinary incontinence, frequent urinary tract and bladder infections, restless leg syndrome by history, and cellulitis. *Id.* The ALJ did not discuss Nurse Slind's clinical notes. This is a significant omission; Nurse Slind's clinical notes and associated test results constitute eighty-seven pages of the record before this court. The ALJ need not discuss evidence that is neither significant nor probative. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). However, the three-year period during which Nurse Slind treated Ms. Wick, as well as the number of ailments treated and the detailed clinical narrative suggests that Nurse Slind's notes are both significant and probative. The ALJ's omission is contrary to the applicable legal standard.

The ALJ instead noted a letter jointly submitted by Nurse Slind and Dr. Baculi. Their December 2006 letter listed Ms. Wick's diagnoses of GERD, depression, anxiety with panic attacks, asthma, chronic back and leg pain related to asthma, PTSD, migraine headaches, and type II diabetes. AR 1631. Nurse Slind and Dr. Baculi also reiterated Ms. Wick's surgical history,

---

[2]The record indicates that Ms. Wick received treatment from two nurse practitioners at the Salem Clinic, Julie Slind, NP, and Julie Crandall, NP. This court cannot determine if the discrepancy represents a change of name or change of provider. The distinction is inconsequential.

including three bladder repair surgeries, sinus surgery, right shoulder surgery, and carpal tunnel release surgery. *Id.* They subsequently noted that Ms. Wick lost two jobs because she fell asleep on duty, and additionally had frequent absences due to her chronic health problems. *Id.* Nurse Slind and Dr. Baculi concluded that, in their opinion, Ms. Wick is unemployable. *Id.*

The ALJ rejected Nurse Slind and Dr. Baculi's December 2006 work opinion because he found it "vague" and contradicted by Ms. Wick's activities of daily living. AR 900. These are not sufficient reasons to reject the opinion of Nurse Slind and Dr. Baculi. Nurse Slind's detailed clinical notes support the December 2006 work opinion, and Dr. Baculi's signature lends credence to Nurse Slind's opinion. *Gomez*, 74 F.3d at 971. The ALJ's omission of Nurse Slind's clinical notes and subsequent dismissal of Nurse Slind and Dr. Baculi's letter is not based upon the record or the correct legal standard.

### 4.    Nurse Practitioner Breyer

Nurse Practitioner Tom Breyer treated Ms. Wick at Marion County Mental Health ("MCMH") between November 13, 2002, and November 4, 2004. AR 826, 1504. During this period Nurse Breyer managed Ms. Wick's psychiatric medications and performed mental health counseling. Nurse Breyer initially assessed recurrent bipolar disorder, dysthymic disorder, and PTSD, as well as rule-out diagnoses of pathological gambling and an unspecified alcohol disorder. AR 828. Over the course of Ms. Wick's treatment, which ran until November 2004, Nurse Breyer dropped the bipolar and alcohol diagnoses and assessed recurrent major depressive disorder and PTSD. AR 1504.

The ALJ singularly noted Ms. Wick's November 13, 2002, and February 27, 2003, appointments with Nurse Breyer. AR 899. The ALJ did not discuss Nurse Breyer's remaining

treatment of Ms. Wick.  Because this treatment spanned approximately sixteen visits and a two-year time period, this is again a significant omission.  The ALJ thus erred in evaluating Nurse Breyer's opinion.

In summary, the ALJ's evaluation of the opinions of treating physicians Drs. House, Lang, and Baculi, as well as Nurses Slind and Breyer are not based upon the record or the appropriate legal standards.

### C. Examining Physician Opinions

Ms. Wick also challenges the ALJ's assessment of five examining medical sources, Drs. Van de Lindt, McConochie, Sjodin, Smolen, and Pitchford.  Each assessed Ms. Wick's mental status between July 1998 and March 2004.

### 1. Dr. Van de Lindt

Psychologist Dr. Van de Lindt evaluated Ms. Wick  for Disability Determination Services ("DDS")[3] on July 18, 1998.  AR 369-85.  Dr. Van de Lindt conducted a clinical interview and mental status examination.  Dr. Van de Lindt diagnosed moderate recurrent major depressive disorder, and suggested a rule-out personality disorder diagnosis.  AR 372.  Dr. Van de Lindt also assessed a current Global Assessment of Functioning ("GAF")[4] of forty, and noted fifty as Ms. Wick's "highest [GAF] this year."  *Id.*

The ALJ discussed Dr. Van de Lindt's report and cited her GAF assessment of fifty.  AR

---

[3]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. §§ 404.1503; 416.903.

[4]  The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100.  *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Revision 2000) (*DSM-IV-TR*) 34.

896. The court first notes that this citation distorts Dr. Van de Lindt's finding. Dr. Van de Lindt assessed a "current" GAF of forty and assessed fifty as the "highest this year." AR 372. These two assessments represent a significant difference. A GAF score of forty indicates "some impairment in reality testing or communication (e.g., speech that is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ." *DSM IV-TR*, 34. A GAF score of fifty indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*

The GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50, 746 at 50,764 - 50,765 (August 21, 2000) (discussing comments to 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.00D). Thus, the Commissioner is not bound by GAF assessments. However, the Commissioner must consider all probative evidence before him. *Howard*, 341 F.3d at 1012. The ALJ's omission of Dr. Van de Lindt's current GAF of forty represents a selective reading of the record.

The ALJ subsequently gave "little weight" to Dr. Van de Lindt's assessment because Dr. Van de Lindt relied upon Ms. Wick's reporting. AR 896. The ALJ may reject physician opinions predicated upon reports of a claimant properly found not credible. *Tonapetyan*, 242 F.3d at 1149. However, the ALJ presently failed to make an adequate credibility finding, and Dr. Van de Lindt's report additionally does not suggest that Dr. Van de Lindt found Ms. Wick not credible. In such circumstances the ALJ may not rely upon his credibility findings to reject a physician's opinion. *Ryan*, 528 F.3d at 1199-1200. The ALJ's rejection of Dr. Van de Lindt's opinion is thus not based upon the record or the appropriate legal standards.

PAGE 19 - OPINION AND ORDER

The ALJ finally found Ms. Wick's activities of daily living, notably attending community college courses, inconsistent with Dr. Van de Lindt's opinion. *Id.* The record before this court does not indicate that Ms. Wick attended community college at the time of Dr. Van de Lindt's July 1998 assessment. This finding is therefore also unsupported.

### 2.    Dr. McConochie

Psychologist Dr. McConochie evaluted Ms. Wick for DDS and vocational rehabilitation services on February 6, 2001. AR 513-18. Dr. McConochie assessed bipolar disorder, which he characterized as "mixed, with both depression and racing thoughts and hyperactive, anxious feelings." AR 517. Dr. McConochie concluded that Ms. Wick has a

> [S]evere impairment in her ability to perform with adequate productivity on a job due to her depression and related symptoms. She has a moderate impairment in her ability to perform mistake-free work due to attention, concentration and motivation problems. She has a mild impairment in general motivation to work.

AR 518.

The ALJ noted Dr. McConochie's diagnoses and opinion that Ms. Wick's "psychologically-based problems would cause an employer to dismiss her." AR 897. The ALJ continued that Dr. McConochie "nonetheless found the claimant capable of managing award funds." *Id.* The ALJ made no identifiable conclusion indicating whether he accepted or rejected Dr. McConochie's opinion. Because the found Ms. Wick's mental impairments non-severe, this court infers that the ALJ rejected Dr. McConochie's opinion. The ALJ's comment regarding Dr. McConochie's finding that Ms. Wick could manage funds does not constitute either a clear and convincing or a specific and legitimate reason for rejecting Dr. McConochie's opinion. This finding is not sustained.

### 3.    Dr. Sjodin

Psychiatrist Dr. Sjodin evaluated Ms. Wick for DDS on June 1, 2000.  AR 426-31.  Dr. Sjodin conducted a clinical interview and examination and assessed recurrent major depressive disorder and dependent personality traits, with a GAF of 60.  AR 430.  Dr. Sjodin concluded:

> The claimant suffers from chronic recurrent depression which she states is at a severe point.  She feels suicidal and is overwhelmed by multiple stressors . . . Her condition is guarded over the next 12 months as it is noted that she has had a suicide attempt in the past when experiencing similar symptoms.  It is noted that she is treated with antidepressant medications and is followed closely by her primary care provider Dr. [House].  For this reason the claimant's overall prognosis is good.

AR 430.

The ALJ briefly discussed Dr. Sjodin's evaluation.  AR 897.  The ALJ noted Dr. Sjodin's diagnoses and found that Dr. Sjodin's GAF analysis indicated "no serious impediment mentally to work."  *Id.*  The ALJ omitted Dr. Sjodin's discussion of Ms. Wick's suicidality and respective twelve-month and overall prognoses.  This represents a selective reading of the record.  The ALJ may not make such a reading of the record, *Howard*, 341 F.3d at 1012, and this analysis is not sustained.

### 4.    Dr. Smolen

Psychiatrist Dr. Smolen evaluated Ms. Wick  on March 5, 2003.  AR 866-71.  Dr. Smolen conducted a clincial interview and examination, noting Ms. Wick's report of her activities of daily living. AR 869.  Dr. Smolen assessed recurrent bipolar disorder "versus" major depressive disorder, and a rule-out diagnosis of chronic post-traumatic stress disorder.  Dr. Smolen also assessed a GAF of 40.  AR 870.

The ALJ rejected Dr. Smolen's opinion because Dr. Smolen "assessed at face value the

claimant's unilateral allegations as not performing basic self-care." AR 900.  The ALJ also rejected Dr. Smolen's opinion because Dr. Smolen "ignored" Ms. Wick's ability to care for her child, obtain housing, medical, and food-stamp assistance, volunteer at her son's school, shop, and play bingo. *Id.*  The ALJ finally found Dr. Smolen's GAF analysis inconsistent with her examination.  *Id.*

As noted, the ALJ erroneously found Ms. Wick not credible.  The ALJ may not reject physician opinions predicated upon a claimant's credibility where the ALJ improperly found the claimant not credible.  *Ryan*, 528 F.3d at 1199-1200.  This reasoning is not sustained.  Furthermore, the record shows that Dr. Smolen noted Ms. Wick's daily activities (AR 869), making the ALJ's finding that Dr. Smolen "ignored" these activities unsupported.

Finally, as noted, while GAF scores do not determine disability, the ALJ must consider all probative evidence.  *Howard*, 341 F.3d at 1012.  Here, the ALJ found Dr. Smolen's GAF score inconsistent with her clincial notes.  Such reasoning is appropriate where supported by the record. *Bayliss*, 427 F.3d at 1216.  However, the ALJ's assessment of Dr. Smolen's notes is not based upon the record as noted above.  The ALJ's dismissal of Dr. Smolen's GAF analysis is therefore not sustained.

### 5.    Dr. Pitchford

Psychologist Dr. Pitchford examined Ms. Wick at the request of the Oregon Department of Human Services on September 9, 2002 (AR 769-72),  and again on March 4, 2004.  AR 1601-05. In September 2002, Dr. Pitchford assessed depressive disorder with elements of dysthymia, a pain disorder, passive personality traits, and a GAF of 60.  AR 772.  Dr. Pitchford performed a second mental status examination and cognitive testing in March 2004 and again assessed depressive disorder "with elements of Dysthymia and Major Depression," as well as personality disorder and

a GAF of 60.  AR 1604.  Dr. Pitchford concluded that, based upon Ms. Wick's reporting, "medical problems remain the primary barrier to her employability."  AR 1605.

The ALJ discussed Dr. Pitchford's March 4, 2004, evaluation in some detail.  The ALJ noted Dr. Pitchford's GAF assessment and Dr. Pitchford's conclusion that Ms. Wick's medical, rather than psychological, problems are her "primary barrier" to employment.  AR 900.  The ALJ therefore gave "little weight to aspects of Dr. Pitchford's assessment that conflict[s]" with medical expert Dr. Crossen's testimony.  *Id.*

This assessment is flawed in two respects.  First, the ALJ must consider a claimant's impairments in combination "without regard to whether any . . . impairment, if considered separately, would be of insufficient severity."  20 C.F.R. §§ 404.1523; 416.923.  Therefore, it is irrelevant whether Ms. Wick's medical or psychological diagnoses are a "primary" cause of her inability to work.  Second, the ALJ may not reject an examining psychologist's opinion simply because it is conflicts with a medical expert's testimony.  Medical expert Dr. Crossen's testimony is discussed more fully below; the court presently notes that an ALJ may not rely upon a medical expert's testimony to reject an examining physician's opinion where the examining physician's opinion is inconsistent with the remaining record.  *Lester*, 81 F.3d at 831.  For both these reasons the ALJ's assessment of Dr. Pitchford's opinion is not sustained.

In summary, the ALJ's evaluation of examining medical sources Drs. Van de Lindt, McConochie, Smolen, and Pitchford is not sustained.

### D.    Medical Expert Dr. Crossen's Opinion

Psychologist Dr. Crossen testified as a medical expert at Ms. Wick's September 29, 2006, hearing.  AR 1673-87.  Dr. Crossen stated that he reviewed the record (AR 1674), but also stated that he did not have all exhibits of record upon questioning by Ms. Wick's counsel (AR 1676).  Dr. Crossen opined that Ms. Wick consistently exhibited longstanding depressive symptoms, as well as anxiety and "some pain symptoms."  AR 1674.  Dr. Crossen also noted "evidence of multiple types of [Listing] 1209[5] condition including alcohol abuse and abuse of multiple drugs."  AR 1675.  Dr. Crossen further stated that he saw no psychological limitations upon Ms. Wick's activities of daily living, mild social limitations, and mild limitations in concentration, persistence, and pace.  AR 1677.  Dr. Crossen testified that "the multiple hospital visits in 2002 were directly related to alcohol abuse and prescription medication abuse according to the record."  *Id.*  Dr. Crossen did not provide a citation for this statement.

The record does not reflect Dr. Crossen's assessment that Ms. Wick's 2002 hospitalization was due to substance abuse, or that Ms. Wick consistently abused drugs or alcohol.  The admitting physician's opinion, cited above, stated that Ms. Wick abused alcohol prior to her admission, but, as noted, concurrent clinical notes do not support a finding of chronic alcohol abuse.  AR 787, 788.  No other treating or examining source, all discussed at length above, consistently cited drug or alcohol abuse among Ms. Wick's impairments.  Finally, Ms. Wick herself testified in response to Dr. Crossen's statement that, "the drinking thing, I really don't know where that's coming from.  I've never had a drinking problem.  I did that one time . . . when I went to the hospital, I drank that fifth.  But otherwise, I mean I don't, I don't drink."  AR 1679.

---

[5]"1209" refers to Listing 12.09, describing substance addiction disorders.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.09.

This record does not support Dr. Crossen's opinion that Ms. Wick was hospitalized or consistently diagnosed with a drug or alcohol abuse disorder throughout the relevant period. Dr. Crossen's opinion furthermore contradicts the evidence submitted by Ms. Wick's treating and examining physicians and psychologists, discussed above. In such circumstances, a medical expert or reviewing physician's opinion may not constitute substantial evidence justifying rejection of a treating or examining physicians opinion. *Lester,* 81 F.3d at 831. The ALJ's reliance upon Dr. Crossen's opinion is therefore rejected.

### E.    Conclusion: Medical Source Statements

In summary, the ALJ failed to give adequate reasons for rejecting the medical evidence of record. The ALJ's rejection of Ms. Wick's treating and examining physicians, and subsequent acceptance of medical expert Dr. Crossen's opinion is not based upon the proper legal standards. The ALJ's review of the record and concurrent reasoning is not sustained.

## V.    The ALJ's Step Three Findings

The Ninth Circuit ordered the ALJ to reconsider his step three findings. AR 1170. Here the ALJ again found that Ms. Wick's impairments did not meet or equal a listed impairment. AR 903. Ms. Wick now asserts that she meets Listing 1.03A regarding her bilateral knee impairments and obesity. Pl.'s Opening Br. 44. The Commissioner asserts that the Ms. Wick points to inapplicable regulations. Def.'s Br. 10. Because the effects of the improperly evaluated evidence establish disability, discussed more fully below, this argument will not be addressed.

## VI.    Lay Testimony

### A.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony.   20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill*, 12 F.3d at 918-19.  The ALJ may not reject such testimony without comment, and he must give reasons germane to the witness for rejecting her testimony.  *Nguyen*, 100 F.3d at 1467.  However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

The reviewing court may not find an ALJ's omission of lay testimony harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the improperly omitted testimony, would reach a different disability determination.  *Stout v. Comm'r*,  454 F.3d 1050, 1056 (9th Cir. 2006).

### B.    Analysis

Ms. Wick challenges the ALJ's assessment of testimony submitted by lay witnesses Charla Howard, Jim Wick, Kelly Hernandez, and Beverly Lang.  Pl.'s Opening Br. 43.  Ms. Howard, Mr. Wick, Ms. Hernandez, and Ms. Lang each submitted statements to the record regarding Ms. Wick's ability to perform activities of daily living, her limitations, and her work-related functioning.  AR 270-79, 295-97, 1381.  The ALJ offered the following assessment of the lay testimony:

> I considered written statements provided by the claimant's friends and family (Exhibits 7E, 14E, and 22E).  However, because these parties have a personal relationship with the claimant and lack the expertise and possibly the motivation to offer an objective or functional assessment, their statements regarding the claimant's symptoms and limitations are considered with caution.

AR 906.

PAGE 26 -  OPINION AND ORDER

This assessment fails to account for the standard articulated above in two significant ways. First, the ALJ's reasoning regarding statements submitted by Mr. Wick, Ms. Hernandez, and Ms. Lang (referred to as Exhibits 7E, 14E, and 22E) contradicts the purpose of lay testimony, which is to provide lay observations of a claimant's functioning. *Dodrill*, 12 F.3d at 918-19. The ALJ's analysis furthermore blatantly disregards the ALJ's obligation to provide germane reasons for rejecting the lay testimony. This reasoning is not sustained.

Second, the ALJ omitted discussion of a statement submitted by Ms. Wick's former employer, Ms. Howard. AR 1381 (Ex. 26E). Ms. Howard wrote that she employed Ms. Wick between January and August 2006, and that during this period Ms. Wick missed an average of one work day per week. *Id.* Omission of relevant work-related limitations observed and described by lay witnesses is reversible error. *Schneider v. Comm'r*, 223 F.3d 968, 976 (9th Cir. 2000). An ALJ's omission of lay testimony may be considered harmless where no reasonable ALJ could reach a different conclusion had he properly considered the omitted evidence. *Stout*, 454 F.3d at 1055-56. This is not presently the case: Ms. Howard's testimony describes Ms. Wick's inability to function in the workplace. The ALJ's omission is not sustained.

## **REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman*, 211 F.3d at 1178. The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292). In such circumstances the reviewing court must credit the improperly rejected evidence. *Vasquez v. Astrue,* 547 F.3d 1101, 1106 (9th Cir. 2008) (petition for en banc review denied, *Vasquez v. Astrue,* __ F.3d __ (2009 WL 1941485) (July 8, 2009)). It is axiomatic, however, that the reviewing court may not credit testimony and subsequently award benefits contrary to the Act. *See Vasquez,* __ F.3d __ (2009 WL 191485 at *1) (O'Scannlain J., dissenting).

The ALJ presently failed to provide legally sufficient reasons for rejecting Ms. Wick's testimony and the numerous treating and examining medical source opinions discussed above. The ALJ's reasoning is furthermore not based upon the record. In such circumstances, the improperly rejected evidence should be credited. *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).

The Commissioner now asserts that the matter should be remanded for further proceedings to address the ALJ's severity findings. Def.'s Br. 6. As stated above, this court will not order new proceedings to address deficiencies at step two in the sequential evaluation. In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second *Harman* prong. *Harman*, 211 F.3d at 1178. The record before this court comprises 1,702 pages spanning approximately twenty years of medical treatment. Four hearings have been conducted before an ALJ, resulting in two decisions by an ALJ and a remand Order from the Ninth Circuit. I find this record sufficiently developed.

I must now determine whether the record clearly requires award of benefits after the improperly rejected evidence is credited. *Harman*, 211 F.3d at 1178. This turns upon the effect of the improperly rejected evidence upon Ms. Wick's RFC assessment and a vocational expert's

subsequent testimony regarding the effects of that assessment. *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).

Ms. Wick and Ms. Howard both testified that Ms. Wick misses approximately one day of work per week due to her pain and symptoms. AR 1381, 1652. Ms. Wick also stated that she continues to experience workplace incontinence. AR 1662, 1664. Additionally, the improperly rejected medical evidence, discussed in considerable detail above, contains properly supported work restrictions and establishes that the limitations described in the testimony of Ms. Wick and Ms. Howard is appropriately accompanied by the medical record.

The vocational expert stated that such an individual missing one day of work per week would require a "sympathetic employer" because a "typical employer in the normal work market would [not] tolerate that kind of absenteeism on an ongoing basis." AR 1695. The vocational expert subsequently qualified that Ms. Howard's allowance of one or more absence per week classed her as a "sympathetic employer" (AR 1696) and that, again, "most employers would not tolerate that" (AR 1697).

Crediting the testimony of Ms. Wick, the lay witnesses, and the medical opinions improperly rejected by the ALJ therefore establishes that Ms. Wick cannot perform work in the national economy at step five in the sequential proceedings. For this reason, the matter is remanded for the immediate calculation and award of benefits.

## <u>CONCLUSION</u>

The Commissioner's decision that Ms. Wick did not suffer from disability and is not entitled

to benefits under Titles II and XVI of the Social Security Act is not based upon correct legal standards and is not supported by substantial evidence.   The Commissioner's decision is REVERSED and remanded for the immediate calculation and award of benefits.

IT IS SO ORDERED.

        Dated this  31  day of July, 2009.

                                           /s/ Michael W Mosman
                                          Michael W. Mosman
                                          United States District Judge

PAGE 30 -  OPINION AND ORDER